Hon. Michael J. Hoblock, Jr. Formal Opinion No. 99-F2 Chairman Racing and Wagering Board 1 Watervliet Avenue Ext, Suite 2 Albany, N Y 12206-1668
Dear Chairman Hoblock:
Your counsel has asked whether the Racing and Wagering Board may authorize the use and distribution of "electronic computer aides" to assist bingo players. Your staff has advised us that such computers would assist players but would not replace the traditional elements of bingo. Use of computers would be optional. Your staff has described computer assisted play as follows: a player would purchase regular bingo cards and then go to a computer terminal. The computer screen would display blank cards and the player would manually type the number/letter combinations contained on each paper card and that card's identifying serial number into the computer.
The game would then proceed as usual. The caller would draw objects or balls from a receptacle at random and the number/letter combinations drawn would be announced to the players. A player using a computer would type each number/letter combination into the computer as it is called. The computer would register the information entered, identify the winning card by serial number, and display an image of the winning card. The player then would retrieve the paper card with that serial number and mark the corresponding spots on the paper card.
Winning numbers would be verified and the player would submit the card for redemption. Your staff has explained that the computer would permit players to play more games at one time and would enable individuals with poor eyesight to play.
We conclude that the Board may authorize the use and distribution of the "electronic computer aide," as specifically described above, to assist in the playing of bingo. Article I, section 9 of the Constitution bans all forms of gambling not expressly authorized in the Constitution itself. As originally enacted, the Constitution of 1894 banned all forms of gambling. Amendments have specifically authorized pari-mutuel betting on horse racing, bingo or similar games of chance to raise funds for eleemosynary and other specified purposes and the establishment of the State lottery.
Article I, section 9(2) defines bingo as a game "in which prizes are awarded on the basis of designated numbers or symbols on a card conforming to numbers or symbols selected at random." This definition also appears in the statute that permits municipalities to authorize bingo within their territorial limits. General Municipal Law §476(3). Your Board is empowered to administer the bingo licensing law, promulgate regulations governing the conduct of games and license distributors of "all cards, boards, sheets, pads and all other supplies, devices and equipment designed for use in the play of bingo. . . ." Executive Law § 435(1),(2).
Your regulations reflect the constitutional and statutory definition of bingo as a game whereby letters and numbers on a card match letters and numbers selected at random. The regulations govern the time and manner of sale and price of bingo cards. 9 NYCRR §§ 5820.12 — 5820.14. They also require that the numbered objects or balls drawn from receptacles conform in size, shape and weight to insure that drawings will be random. Id., § 5820.15. Additional regulations govern the drawing and verification of the numbers drawn. Id., § 5820.16 — 5820.22.
In a prior opinion, we concluded that the laws governing bingo do not authorize an electronic bingo proposal. Op Atty Gen No. 85-F8. The proposal we reviewed was utilization of a computer terminal to replace traditional bingo cards. The terminal would display two bingo "cards." A central computer connected to the terminal would select numbers at random; if those numbers appeared on the cards displayed on a particular terminal they would be marked electronically. Play would continue until a winner was identified. We concluded that the definition of bingo as a game played on cards with numbered balls or other objects drawn from a receptacle at random, which the current Constitution, statutes and regulations still employ, did not contemplate a computerized game like the one described. We also found that amendment of the regulations to permit computerized bingo would not be authorized by governing law, which contemplates the use of traditional hand-held cards to play bingo. The Constitution continues to require the use of cards.
The use of computers to assist bingo players in games that are conducted in the manner authorized under current law is distinguishable from the computer bingo proposal we reviewed in our prior opinion. Your proposal does not alter the game of bingo as defined in the Constitution and the governing statutes and regulations. Consistent with the current statute, regulations, and provisions of the Constitution, numbered objects or balls would be drawn randomly from a receptacle and cards would be marked and submitted as proof of "bingo." The computer, under your proposal, would be used only to assist players with poor eyesight and to facilitate playing of multiple games (consistent with any regulatory limits). A player could elect to play without a computer. We caution the Board that exceptions to the general prohibition on gambling are construed narrowly. See, Op Atty Gen No. 90-F5. Deviation from the proposal presented may be inconsistent with the Constitution or State law. Thus, the Board may authorize distribution and use of computers as proposed.
Very truly yours,
ELIOT SPITZER, Attorney General